On May 14, 1997, Thonn Mom was indicted on a single charge of carrying a concealed firearm in violation of R.C. 2923.12. Before trial, counsel for Mr. Mom filed a motion to suppress the firearm as evidence. A hearing on the motion was conducted April 6 and 7, 1998. After the trial court overruled the motion to suppress, Mr. Mom entered a plea of "no contest" to the indictment. He was found guilty and sentenced.
Counsel for Mr. Mom has pursued a direct appeal, assigning a single error for our consideration:
 "The trial court committed reversible error by overruling a defense motion to suppress the results of a search conducted in violation of the rights of Appellant arising under the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I of the Constitution of the State of Ohio."
The testimony at the hearing on the motion to suppress was from two police officers, Brian E. Wildman and James Sanford. Officer Wildman was assigned to the Strategic Response Bureau, Criminal Information Unit of the Columbus Division of Police. His specific responsibilities involve investigation of gang-related incidents. (Record at 4.)
On September 26, 1997, Officer Wildman received a page from Sisouvan Keomanivong, who indicated that Thonn Mom had pointed a gun at him and several other people in front of an apartment complex at Lockbourne and Smith Roads in Columbus. Officer Wildman then contacted dispatching to verify that dispatchers had received the information and had information regarding the license plate on a white vehicle driven by Mr. Mom.
Thonn Mom was already known to Officer Wildman as a member of a Cambodian street gang called CBC.
About one and one-half hours after the page, Officer Wildman located Mr. Mom's vehicle at 1754 Oakwood Avenue, the residence of Mr. Mom's mother and brother. Mr. Mom and another individual entered the vehicle and drove away. Officer Wildman made arrangements for marked police cruisers to stop the vehicle.
Marked police cruisers did in fact stop Mr. Mom's vehicle. Officer Wildman removed Mr. Mom from the car. While doing so, Officer Wildman saw the butt of a handgun sticking out of a white bag on the driver's side of the vehicle Mr. Mom had been driving. Officer Wildman seized the firearm. In the bag with the firearm he found a loaded clip of ammunition.
Officer James Sanford also testified at the hearing. Officer Sanford works with Officer Wildman in the Criminal Information Unit. Officer Sanford testified that the original report was from a group known as "the Laos Boys" and involved a claim of contact between the Laos Boys and a group called CBC. Officer Sanford acknowledged an on-going feud between the two groups.
Officer Sanford was present when the car driven by Mr. Mom was pulled over and searched, resulting in the seizure of the firearm and ammunition.
The testimony at the hearing demonstrated that the stopping of Mr. Mom's car and his removal from the car were done without the benefit of a search warrant or an arrest warrant. Warrantless searches and seizures are per se unreasonable, subject to a few well-delineated exceptions. See Katz v.United States (1967), 389 U.S. 347.
One of the well-delineated exceptions is the exception where a motor vehicle is searched. Such searches are permissible when probable cause to search the vehicle exists. Since we find the existence of probable cause here, we find the search conducted here was permissible under the terms of the Fourth Amendment to the Constitution of the United States and Section 14, ArticleI, of the Ohio Constitution.
Officer Wildman received a report from a known source or informant. Officer Wildman clearly believed what the informant told him, or Officer Wildman would not have invested the time he did in finding Mr. Mom's car and following it. Officer Wildman was aware of the friction between the people who were friends of Mr. Keomanivong and Mr. Mom. This "feud," as described by Officer Sanford, was a factor Officer Wildman could use in deciding whether or not Mr. Keomanivong was believable. The feud increased the likelihood that a member of the one group had threatened members of the other group. Clearly, Officer Wildman also knew that the feud could make a report of illegal activity less credible, when the report came from a rival group or "gang."
Again, Officer Wildman clearly believed the report from Mr. Keomanivong. Officer Wildman could have obtained a search warrant with an affidavit which read "A reliable informant who has given reliable information in the past states that he/she has seen Thonn Mom brandishing a firearm at members of a rival street gang today. Mr. Mom was in a white Honda with a known license plate when he brandished the firearm."
Obtaining a search warrant for the white Honda would have been preferable, but the procedure used was constitutionally permissible.
We, therefore, overrule the sole assignment of error. As a result, we affirm the judgment and sentence of the trial court.
Judgment affirmed.
LAZARUS, P.J., and DESHLER, J., concur.